Good morning, Your Honors, and may it please the Court, Jason Burge, on behalf of Ronnie and Sharon Ward. There are three issues in this appeal. The first two concern whether the Bankruptcy Court had subject matter jurisdiction over the state law dispute. The third concerns whether the Bankruptcy Court had authority to enter a final judgment since this was a non-core matter. I'm going to start the argument with the first two issues, and then I'll turn to the third at the end. Now, in In re Coobley, a Seventh Circuit case cited with approval by this Court, Judge Frank Easterbrook, in his inimitable way, summarized the jurisdictional issue in this case. Quote, courts must be particularly careful in ascertaining the source of their power lest bankruptcy courts displace state courts for large categories of disputes in which some party may be bankrupt. This case is precisely the type of case that Judge Easterbrook was discussing, because the lower courts recognized this is a, quote, garden-variety state law contract action to enforce a personal guarantee. The facts of the action can be summarized quite quickly. Ronnie and Sharon Ward owned a car dealership. It had a financing arm named Car Credit. The Ward signed personal guarantees for Car Credit's debts. Car Credit went out of business and had unpaid debts. Cross Keys sued Ronnie and Sharon Ward in state court to enforce the personal guarantees. Even if, even if all of that is true as you've described it, it can still be related to in terms of conferring jurisdiction? I think it could be if there was a legitimate bankruptcy, Your Honor, but then on the related to issue, I think there's a couple things we have to look to here that make this particularly inappropriate situation for bankruptcy jurisdiction. I think number one, we're not talking about a voluntary bankruptcy. This was an involuntary bankruptcy filed by Cross Keys to remove its own state court lawsuit. So I think the risk of forum shopping is quite high. Number two, it's a Chapter 7 proceeding, not a Chapter 11, and so the bankruptcy court's jurisdiction is lower. And third, and this is the oddest fact in the case, Cross Keys already foreclosed on all of the debtors' assets and purchased them in a sheriff's sale immediately before it became a voluntary bankruptcy. Now there's no prior case I'm aware of in this circuit where a party has filed an involuntary bankruptcy petition to remove its own third-party state law action to federal court, and certainly not where the party did so after seizing all the assets. Are you talking about bad faith or are you talking about related to? So I think the two— Because both of your arguments are bleeding into each other on that point. And I think the two are not disconnected because the question under related to under the Bass Test, there's the two standards, right, has to affect the debtors' liabilities, rights, costs of— And you don't contest that one, right? And I don't contest that one. It has to affect the administration of the estate. But that second one says there has to affect the administration and there has to be a valid estate to administer. What case says that? I mean, it's— I think if you look— —administration of the estate. I think if you look at the Little Creek case, the Little Creek case says in evaluating this case in 1934, this court has an obligation to determine whether the bankruptcy court was— bankruptcy case was filed in good faith. Again, we're going there and you're going to bad faith. I thought we were talking about whether the action on the guarantees was related to the bankruptcy. Well, because I think the—if you look at the Little Creek case, and you can go all the way back to the Metro Realty case, if the bankruptcy case was not filed in good faith, it should be dismissed, and the court can do that sua sponte. And if there's no bankruptcy case, then there cannot be any bankruptcy case for the action to relate to. So I think the two are not two different issues. I think the two are connected in both parts of the analysis. I thought what the argument made in your brief was that it couldn't be related to because there were no assets in the bankruptcy estate. Well, that's the other argument under 1334, that if you take a look at this estate, there are no assets to administer. And in fact, it has been now almost two years. It'll be two years next week. And there has been no administration that has happened to this estate whatsoever. The action was filed. The only thing that has happened is that an adversary proceeding was removed. What's your best case for the proposition that an action that can't be related to the bankruptcy if there are no assets in the bankruptcy estate? Well, I think if you look at the Bass case, which says that if the action can't affect the estate because there is no estate, then there's that one. I think if you look at— Does Bass say that? I know it says can't affect the estate, but does it say if there's no estate? Because that's the core of your argument. Well, there's no assets because they already foreclosed on them, so therefore it can't be related to. I believe Bass actually does say no estate because the precise facts of Bass, right, is that the estate had already been administered. Everything had been distributed. Oh, they're now a little bit different, though. The estate here hasn't been closed, right? Well, it hasn't been closed, but no action has been taken. There's nothing for the trustee to do, and if you look at this action, where we have right now is that Crosky's schedules, which are in the record at pages 1600 to 1607, they reflect there are no tangible assets in this estate. Well, that's not the question, right? The schedules reflect that there is a fraudulent conveyance claim against Ronnie Ward, right? Well, the schedules reflect that there could be. I mean, as Crosky's itself says, that's an inchoate litigious right, which has no value unless it's asserted, right? They say themselves it can't be transferred. Let's slow it down for just a second. It's part of the estate. The estate theoretically could try to bring that claim. Okay, and at the time, we assess the jurisdiction, the related to jurisdiction at the time of the filing of the bankruptcy petition, correct? I think subject matter jurisdiction has to exist throughout a case. That's 100% true, but for purposes of determining whether it existed, for the purposes of the 1334 question, we look at the time of the filing. I think you could look at the time of the filing, but I think it has to exist not only at the time of filing, but throughout the case. So let's just go slowly through it. Sure. At the time of the filing, there's a fraudulent conveyance claim against Ronnie Ward owned by the estate. You know what I mean by owned. I mean, I believe that claim is valueless, and I think the evidence in the schedule shows that it's valueless, but correct. Theoretically, a trustee could assert a fraudulent transfer claim. Okay, then I guess what would be your best case for the idea that in assessing 1334 jurisdiction, we can look at the claim and adjudicate the merits of it, as you just did, and suggest that it's valueless? Well, I don't think you have to adjudicate the merits of it, but this is ultimately, if you go back to Little Creek, this is an equitable jurisdiction. I think the court has to go beyond the pure statements of the parties, because the only basis we have for a fraudulent transfer claim is Cross Keys filed a schedule claiming there's a fraudulent transfer claim. Now, we know Cross Keys could have brought a revocatory action for the same claim. In the same schedules, they say the money was diverted from them, and they didn't bring a revocatory action, and they let a year pass, so that revocatory action is prescribed. So evidently, Cross Keys didn't believe that claim had any value. Well, can we, I mean, there's any number of reasons why Cross Keys may not pursue it, including the existence of the adversary proceeding, but let's just, I want to slow down and just look slowly through it. At the time of the filing, the claim is listed on schedules. It was a couple months later, but yeah, the initial schedules in the case, it was listed on the schedule. Perfect. And you agree with your friends on the other side, as I understand, but correct me if I'm wrong, that we can't look at the claim on the schedule and just say, well, that's worthless, so we're just going to say it's zero. I don't know that I agree with that. I think the bankruptcy court should look at least a little behind the schedule when the only claim in a case is an inchoate litigious right, and particularly where you have the other badges around here that suggest bad faith filing, right? I mean, it's filed by the, it's an involuntary petition for chapter seven. The entity has no more assets other than this purported fraudulent transfer claim, which the involuntary petitioner didn't file on their own sake. So it looks, I mean, there's no justification given in the briefs other than forum shopping for why we have this bankruptcy in the first place. So I think in that context, the bankruptcy court ought to look with a sharp eye at the schedules and not simply say, well, the petitioning creditor who's trying to remove this guarantee action to federal court says there could be a fraudulent transfer claim against the guy I'm suing in state court, therefore I've got federal jurisdiction. I'm going to bootstrap myself into federal court. I think a court of equity has an obligation to go beyond that and take a look and really evaluate what's going on. So let me just assume that you're correct, or let's just assume that you're incorrect about whether and to what extent the fraudulent conveyance claim listed on the schedule is in fact a valuable asset, and hence the estate has something in it. Do you have an authority for the proposition that, as you pointed out, subject matter has to exist throughout the pendency of the suit? Is there any case that you can point us to that's sort of the destitute, right, the failure to act and exercise a right of cross keys post-filing as to that fraudulent conveyance transfer claim somehow makes it valueless? Well, I think if you look at the cases like Antelope Technologies, they say, or even all the way back to Metro Realty with Judge Wisdom in the 70s, they say as soon as a bankruptcy court judge, or frankly any judge, Judge Wisdom referred to a district court judge, as soon as he realizes the bankruptcy was filed in bad faith, the court should act to dismiss it. And that's not just on the day the bankruptcy is filed. That is throughout the entire proceeding. So I accept, you know, at the very beginning when this thing was filed, there were no schedules. Nobody knew what the assets were. And several months later, the schedules were filed, and they showed the only asset that had any value at all was this one litigious right against Ronnie Ward. And as months go by, no action is taken on that. The trustee has done nothing. We're now approaching two years without any action. And at some point, the bankruptcy or district court should look at that and say, this is not a valid bankruptcy. And then the second point is, in thinking through the question of does this estate have assets, you get to the issue of the bad faith filing of the bankruptcy. And I think the bankruptcy court has an obligation to look at it and say, what is the evidence for why this bankruptcy was filed? And I think it's telling here that Crosskey's filed an involuntary bankruptcy, and then other than removing its own state law action, the petitioning creditor who started this whole thing has taken no action on the bankruptcy. They don't have anything they want the bankruptcy court to do other than adjudicate their state law claim. I was listening intently to both of your two points, and I heard you say that it was a bad faith filing on their part as to both of your two points. So if you're wrong about the bad faith filing, did both of those fall, or do you have any backups to that proposition? Well, I think it's the question of both. I think there are really two independent ways that you could say there's no subject matter jurisdiction. One is it's a bad faith filing, and there's no bankruptcy to support jurisdiction. The other is that whether it's a good faith filing or a bad faith filing, nothing that happened in this adversary proceeding is going to affect the administration of this estate. There are no assets to distribute now, there will be no assets to distribute tomorrow, and whether the bankrupt debtor owes Crosskey's $3 million or nothing, still no creditor is getting any money, because there are no assets in this estate. And I think we should be careful when we're talking about an estate that's made up purely of these inchoate litigious rights, because parties can always allege, you might have a right, you might have a right. That in and of itself just saying somebody could file a lawsuit, that doesn't create value. It certainly doesn't give the trustee anything to distribute. If you look at all of the cases that are cited in the briefs, you look at Canyon, there's a specific reference to the fact that the trustee obtained and distributed $200,000. If you look at Spillman, there's a specific reference to the fact that they sold a golf course worth $9 million. I mean, these are real assets, there was real administration going on in the bankruptcy. We have none of that here. The court can look at the docket and just see, nothing has happened in this bankruptcy. And I think, particularly when you're talking about equitable jurisdiction, it's appropriate for the court to take a look at that, and not simply to say, because the petitioning creditor filed a schedule showing a single potential asset, an inchoate right, therefore we have a valid bankruptcy. Now quickly, I just want to turn to the third issue, this question about the Bankruptcy Court's authority. There's no dispute here, these were non-court claims as to the wards. So under the Supreme Court's holding in Stern and Wellness International, the Bankruptcy Court can only issue a final judgment with consent, which must be knowing and voluntary. Now I'll freely admit, the wards did not file the Form 9027 statements below. They could have filed those statements and affirmatively represented that they did not consent. But this circuit has never held that failing to file the form by itself constitutes consent to final bankruptcy court adjudication. The question- What's the purpose of filing the statement then? The purpose of filing, well it's a requirement like any other requirement. It's not, it's, I mean, it says, I thought it said, after a case is removed from state court and referred to bankruptcy court, a party shall file a statement that declares whether the party does or does not consent to entry of final rumors by the bankruptcy court. So I would assume the purpose of the, of filing the statement is to indicate consent or not. I, oh that's certainly the purpose of it, but I think the question is if you simply fail to file the form, at that point you're in violation of the federal rule. The Bankruptcy Court could sanction you. The question is whether that sanction should be the deprivation of your Article III rights. And I think if you look at Stern and Wellness International, it's not just enough to say you didn't object, your consent has to be knowing and voluntary. And I agree, they should have filed the form. But when they didn't file the form, and when it was brought to their attention by the Bankruptcy Court in September of 2020, they immediately indicated in response, I'll be prepared to argue that if that ever comes up. That was not an indication I consent, that was an indication I don't consent. And what really troubles me here is that if you go forward in the transcripts, at every point in the case, the Bankruptcy Court judge expressly represents he is going to issue findings of fact and conclusions of law. It's at the record at page 4152, 67, 13, and 14. At each time he's getting ready to rule, he says, I, this is a non-core matter, I have to issue findings of fact and conclusions of law. It's only after he reaches all of his rulings that he then, sua sponte, calls a hearing for the next day to determine whether to issue final judgment. That's radically different than these cases like signs where the parties go in and nobody makes the objection, everybody assumes we're going to have a final judgment. Here, they made an objection in September 2020, admittedly, orally, should have filed the form, but the Bankruptcy Court itself stated he was not going to issue final judgments until he got to the end of the case, and that kind of bait and switch is simply not knowing involuntary consent to waive Article III rights. So with that, unless there are further questions, I'll reserve the remainder of my time for a moment. Yes, you've saved time for a moment, Mr. Burge. Thank you. Thank you. Mr. Rubin? May it please the Court, Judge Duncan, you began by asking to separate the 1442 issue, the removal issue, from the bad faith, and I want to talk about them separately, but I want to begin with the fact that the fallacy that runs through the appellant's arguments on both is their misapprehension of Louisiana law and their misreading of Bass. Now, let's talk about Bass first. They conceived that the first step is there, related to conceivably. They disagree about the second step, but let's look at what Bass said. The Bass prong is whether it not has an effect, but could conceivably have an effect, and Judge Oldham, you noted the test is at the time of filing. In fact, that's the ruling of the Canyon case at the time of filing is when you tested. What were the facts in Bass? Well, Bass cited Judge Wisdom's decision in In re Wood, a 1987 decision, and that case involved post-petition claims, not pre-petition claims, and Judge Wisdom said that even if there is a possibility, this is a quote, that this suit may ultimately have no effect on the facts before us. It will have no conceivable effect. So the conceivable effect is the possibility. In fact, there are three possibilities of assets in the estate. One is the diversion claim. There's an affidavit from Ms. Artis saying that within the last two months before filing bankruptcy, they discovered that there had been a diversion of $140,000. In fact, the bankruptcy judge at the first hearing said, I understand. Possibility of preservation of the estate is an important thing. And if that money had been found, or it will be found, because the time hasn't run, the time won't run until August, by the way, if it's found, it goes into the estate, not subject to the security interest. The second claim is an account receivable claim shown in the schedules, $110,000 account receivable claim. The third is this inchoate claim, and I'm going to come back to that in just a minute. Now, the trustee administers the estate. The trustee was appointed in August of 2020. And in fact, early on in the estate, in September of, in August of 2020, there's an adversary proceeding less than a month afterwards. And two things happened at that. One is that there's a discussion of the claims and the possibility in the Section 5 claims. And Mr. Roundtree, this was not counseled at, Mr. Burns was not counseled at the trial. But Mr. Roundtree, counsel at the trial, said car credit has, quote, whatever claims it has, and the trustee has a right to pursue it. That's the record of 2837. He's conceding. There's conceivable effect. That's what you need under the Bass case. Now, this is not a no-asset case. As I said, there are three rights. There's a diversion claim, $140,000. There is the account receivable claim. And then there's these tort claims. Not once, but three times in the district court case in Ouachita Parish, there's a claim that car credit was damaged and gets damages from crosskeys. Those damages are assets of the estate. The argument here is, well, there was a sheriff's sale. There was nothing left. Well, the sheriff's sale argument is wrong in two respects. The security interest was 2613. It said general intangibles. Well, in Louisiana, general intangibles cannot encumber tort claims. And the reason is there's a special Louisiana statute, RS-10, colon 9-108. Louisiana has an unusual non-uniform UCC because of our civilian provisions. And what that says is if you're going to encumber tort claims, you got to use specificity. You can't use generic language like general intangible. The second problem is, as was discussed in the Connerly case, under Louisiana special civilian rules, you cannot encumber tort claims until a suit is filed. That's the Inco 8 tort claim. 2013 security interest could not have encumbered the tort claims because it didn't describe them. And in any event, even if it had described them, it wouldn't have worked because the suit wasn't filed in state court until 2019. So the sheriff's sale did not scrape away the assets. I want to talk about the bad faith filing. Now, this relates not to the assets and they're related to jurisdiction. This relates to whether the bankruptcy itself was properly filed. Now, I want to begin by saying that issue is not properly before this court. And the reason it's not properly before this court is because that was in the main case and we're now into the adversary. And there are two different cases. And in fact, this court has said more than once. And in the Dorsey case, and I believe Cleveland Imaging, I believe, Judge Smith, you were on that panel, wrote that when you have an adversary proceeding, the notice there does not affect the main proceeding and vice versa. What happens? What are the facts? In February of 2021, there was a motion to dismiss in the main case. On March of 2021, bankruptcy judge says, yep, should be dismissed. Excuse me, we're not going to dismiss it. And for many reasons, including abuse of process. In May of 2021, the district judge refuses to dismiss and dismisses the appeal. Nothing happens. There's no appeal to this court in the main case. This case arises from a June 2021 opinion. One month after the dismissal was refused, the bankruptcy judge and the adversary. So adversary and main case. The bad faith filing, I think, is not before you. It's not properly before you. But moreover, even if it were before you, and I don't think it is, there is no bad faith filing. There's an affidavit by Ms. Artis, A-R-D-I-S, who's the bank officer, who says within two months, in August, she says, within the last two months, we discovered there's been a diversion of $140,000. And immediate concern is how do you stop that? Are there other diversions? Is there anything else going on? How do we shut down this process of diverting funds? Bankruptcy, that does it. And that's the good faith basis. There was a reason to preserve the estate that was recognized by the bankruptcy judge at the very first hearing. Now, I want to talk about consent for a minute, which is the last argument that they made. And they said, well, yeah, we didn't file the 9027 statement. They kind of glide over the fact that that uses the word shall, not may, shall. They also don't talk about the fact of bankruptcy rule 7012. 7012 says, if every response is pleading, you shall file a statement of consent. Now, I don't think, by the way, the bait and switch argument was properly before you either. Why? Was it in their argument to the district court? In their district court brief, they had the appeal from the bankruptcy court to district court. There's one page. It doesn't talk about bait and switch. They've waived that argument. But even if they haven't, they knowingly did it. And bait and switch doesn't apply.  September 3, 2020, within two months of the bankruptcy filing, there's a hearing. Bankruptcy judge talks specifically to counsel saying, you know, you didn't follow the 9027 statement. Kind of concerned about what that does. Counsel doesn't do anything. And then counsel engages in full throttled litigation mode, seeking judgments, not reports of recommendations, but judgments from the court. So what do they do? In December 2020, after being warned by the district court about the 9027 statement, Mr. Ward, joined by his other entity, Ward Chevrolet, files an answer to an amended petition by Caldwell asking judgment be rendered. November 2020, the wards file an amended answer to the Cross Keys claim in the first adversary proceeding, and they allege estoppel and affirmative defenses and pray for judgment. And no statement under 7012 that they don't consent. January 2021, even more strongly, this is now a consent judgment in which Mr. Caldwell consents to a judgment against him by Caldwell Bank. And he says he consents to the judgment and the judgment is rendered. And there's no statement. I want to report a recommendation. It's a consent to the judgment. And then in March of 2021, Mr. and Mrs. Ward file an opposition to Cross Keys summary judgment motion. And they don't mention lack of consent. In fact, they assert again affirmative defenses. This court in PFO Global decided this year, and I believe Judge Duncan, you were on that panel, explained the wellness decision. And wellness, as you know, is a Supreme Court case that said implied consent is enough. They also said it's a deeply fact-bound analysis of the procedural history. Therefore, the clear error rule applies. It's not clear error given what has happened here. You look at the bankruptcy judge's decision. You look at the district court's decision. And they go through in great detail while there is consent. There is no clear error there at all. In fact, there is no error there at all. Now, the Wards are wrong that this was a no-asset bankruptcy. They're wrong that it was a bad faith filing because it was to preserve assets and to stay future attempts to preserve, to divert monies. They're wrong that this is not a related to proceeding. They're wrong that it has no conceivable effect. And there is no clear error in the bankruptcy court's findings or the district court's findings affirming that. We respectfully suggest that the decision below be affirmed in all respects. All right. Thank you, Mr. Rubin. Thank you. Mr. Burge, you have some time for a moment. Thank you, Your Honor. So two things Mr. Rubin said that are just flatly incorrect. The first, he said that one of the assets in this bankruptcy was the accounts receivable. I thought they had conceded in their brief when they said there were three assets. It didn't include that, that the accounts receivable were not part of this estate. But if there's any question, if you look at the bill of sale, there is no question they acquired all of the accounts receivable two days before the bankruptcy. I just assumed they had admitted that. Then second, he claimed that the reason why they filed was to prevent the diversion of assets, which is kind of a remarkable statement. Because if you look at the schedules they filed, there are no assets left to divert. All of the assets have been acquired two days before the bankruptcy. There's no cash. There's no accounts receivable. There's no balance sheet assets whatsoever. The only thing I guess that could have been diverted was the tort claim. But that doesn't even make sense as an asset to divert. Because after all, they could have asserted the tort claim. He said himself, they had a secured interest in the money that they're claiming that Ronnie Ward diverted. That's right there in their schedules. So the idea that they scheduled, they filed this bankruptcy to prevent diversion of assets is just belied by their own schedules. What we know is that they filed the bankruptcy and then the very next day removed their state law cause of action. That's transparently the reason why this bankruptcy was filed. And under Antelope text, under the Brazos Emergency Services, gaining an advantage in litigation is plainly an improper reason to file bankruptcy. That's not why we have the bankruptcy code. We have the bankruptcy court with its excessive equitable powers so that parties can bootstrap their cases. Mr. Burr, to the extent this goes to your bad faith argument, I'd like to your response to Mr. Rubin's argument that the bad faith issue isn't even before us. We don't have jurisdiction to consider it. Well, like I said earlier, I believe the bad faith, if you look at Little Creek all the way back to Metro Realty, it underlies the 1334 analysis. You can't do the 1334 analysis without considering bad faith. In terms of whether we filed the notice of appeal in the correct proceeding, what happened was there was a motion filed in the main bankruptcy. That motion was denied procedurally. It was never considered on the merits. It was simply dismissed without or with prejudice for failure to properly notice it. There was an appeal taken to the district court which held this was a denial of motion to dismiss. That's an interlocutory ruling. We can't, you know, there's no appellate jurisdiction over that. We've got to wait for a final appeal. And so I believe if that had been appealed to this court, you'd be in the same position. The court would say denial of a motion to dismiss, interlocutory ruling, no basis for appeal. The first final judgment is the judgment in the adversary proceeding. And on appeal from that, we raise this in our statement of issues on appeal under 8009, the bad faith filing. It was fully briefed to the district court. The district court ruled on it. So I believe it's frankly part of the analysis of the 1334B. It was clearly part of the appeal from the adversary proceeding because it underlies the subject matter jurisdiction analysis. I'll just briefly talk about the issue of consent to final adjudication. I think if you pull up the transcript, pages 2945 to 2946, where the bankruptcy court raises this issue, the bankruptcy court says, quote, I will only draw the inferences that 9027 permits me to draw. I might conclude that you've waived your right if I keep this case to contest the entry of final orders. That's an issue for another day. And Mr. Rountree says, I'll be prepared to argue it when it comes, if it comes. So the moment it was brought up, you should have filed this to indicate lack of consent, Mr. Rountree indicated, I don't consent. And then going forward, if you look at the actions of the bankruptcy that were described, I don't see how simply filing an answer and asserting affirmative defenses by itself can be consenting to final adjudication. The only thing we're really talking about is, apologies, the settlement of the motion that was filed by another party called Whale Bank. And in response to that motion, to resolve a contested motion, Mr. Ward agreed to a consent judgment. And frankly, I think there is a judicial interest in preserving settlements. And I think if you have a rule that says, if you settle any matter with any party, you're then going to be consenting to final bankruptcy court adjudication over all issues in the case. That's going to be a terrible rule for bankruptcy court proceedings because it's going to discourage settlements. We ought to be encouraging settlements. I understand the issues associated with Sharif and implied consent. I get that. But what would be your best case after Sharif that says that there's no implied consent to the bankruptcy court's jurisdiction to enter final judgments, where one of the parties requests the entry of a consent judgment? Is there a case that has ever said that? I'm sympathetic on your Sharif point. I get it. I'm just trying to understand. I don't know that there's a case that's directly on point. I just think it comes back to the general incentive to encourage settlements and the fact that it was an issue that was a completely different issue. It had nothing to do with his guarantees. It had to do with the assigning of the stock, which is not the issue between him and Kroski. And so it didn't concern the same facts as the motion for summary judgment. It was just a different issue. And I think if you say, if you allow for a consent judgment, if you settle a claim against one party, you're consenting to final bankruptcy court adjudication over all the issues that you're going to have as parties being unwilling to settle. And I think that's a bad precedent. Does that enlist our further questions? Thank you, Mr. Burge. Your case and all of today's cases are under submission, and the court is in recess until 9 o'clock tomorrow. Thank you.